UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DALE GILLIS, et al.,**

       **Plaintiffs,**　　　　　　　　　　Case No. 2:06-cv-1079
　　　　　　　　　　　　　　　　　　　　**JUDGE GREGORY L. FROST**
       **v.**　　　　　　　　　　　　　　　Magistrate Judge Kemp

**HARTFORD INSURANCE,**

       **Defendant.**

### OPINION & ORDER

This matter comes before the Court for consideration of a Motion for Summary Judgment (Doc. # 19) filed by Defendant Hartford Insurance ("Defendant"), a Memorandum in Opposition (Doc. # 21) filed by Plaintiffs Dale and Diane Gillis ("Plaintiffs"), and a reply. (Doc. # 22.) The Court finds Defendant's motion (Doc. # 19) well taken. For the reasons that follow, the Court grants Defendant's motion. (Doc. # 19.)

### A. Findings of Facts

The parties do not dispute the following facts.

On November 18, 2005, Plaintiff Dale Gillis was involved in a motor vehicle accident in Warren Township, Ohio. Neither the owner of the vehicle nor the driver that struck Plaintiff Dale Gillis's vehicle maintained liability insurance at the time of the accident. At that time, however, Plaintiffs were insured by Defendant. The policy was in effect from December 21, 2004 to December 21, 2005.

Prior to the accident, Plaintiffs received an advertisement from Defendant's AARP Auto Insurance Program encouraging Plaintiffs to contact Defendant for a free rate quote. Plaintiffs contacted Defendant via telephone and asked Defendant to provide Plaintiffs a rate quote

duplicating Plaintiffs' current coverage.  Subsequently, Defendant mailed to Plaintiffs a premium quote for bodily injury liability, property damage liability, medical payments and uninsured/underinsured bodily injury coverage for all four of Plaintiffs' vehicles listed on the policy.  Defendant offered the uninsured/underinsured bodily injury coverage at the cost of $ 38.00 per vehicle.  (Doc. # 19-4.)

The application also included a supplemental application entitled "Uninsured/ Underinsured Motorist Coverage [:] The Choices Available To You In Ohio."  (Doc. # 19-4.)  The supplemental application explains the purpose of uninsured/underinsured coverage.  *Id.*  Namely, it covers benefits for bodily injury or death caused when a person is injured by someone who is uninsured or underinsured.  *Id.*  Although it explains that uninsured/underinsured insurance is optional in Ohio, it encourages the applicant to include this coverage at limits equal to the policy's bodily injury limits.  *Id.*  Finally, the supplemental application contains a section that explicitly allows the applicant to accept uninsured/underinsured insurance at a limit up the applicant's selected bodily injury limit by checking the appropriate line.  *Id.*  Alternatively, the applicant can check line B which states "UMBI Coverage is rejected."  *Id*.   The application also advises the applicant to contact a representative of Defendant if the applicant has any questions.

After receiving the application, Plaintiffs did not contact Defendant to inquire about the uninsured/underinsured coverage.  Rather, Plaintiffs completed the application and returned it to Defendant.  *Id.*  Plaintiffs specifically rejected uninsured/underinsured coverage by checking Line B.  *Id.*  Plaintiffs also signed the bottom of the supplemental application.  *Id.*  Below Plaintiffs' signatures is a note that reminds the applicant that "[y]our UMBI coverage selection or rejection is binding on all Named Insureds, other insureds or applicants."  *Id.*

The next page of the supplemental application is entitled "Uninsured Motorist Coverage." *Id.* It explains that this coverage ("UMPD coverage") is also optional and provides benefits for property damages to a vehicle caused by an uninsured motor vehicle. *Id.* This portion of the application also contains two lines, A and B, allowing the applicant to explicitly accept or reject UMPD coverage, respectively. Plaintiffs again checked line B and thereby rejected UMPD insurance as well. Plaintiffs admit that they signed all of the portions aforementioned and acknowledge that they did not "fully read" the pages that they signed. (Docs. # 21-1; 21-6.)

Pursuant to Plaintiffs' completed application with signature, Defendant issued Plaintiffs an insurance policy without uninsured/underinsured bodily injury coverage. Moreover, the declaration page of the policy (Doc. # 19-5) indicates that the policy did not include uninsured/underinsured motorist coverage. Consequently, Plaintiffs did not pay a premium for uninsured/underinsured coverage.

After Plaintiff Dale Gillis's car accident, Plaintiffs sought uninsured motorist coverage based upon the lack of insurance by the driver and the vehicle owner. Defendant denied Plaintiffs' uninsured motorist coverage because Defendant did not include it in Plaintiffs' policy after Plaintiffs explicitly rejected it. Plaintiffs' filed the instant Complaint on October 4, 2006. Defendant now seeks summary judgment on the issue of uninsured motorist coverage. The parties have completed briefing, and the motion is now ripe for deposition.

### B.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden of showing the absence of any such "genuine issue" rests with the moving party: it must inform the district court of the basis for its motion, and identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ P. 56(e).

The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot rest on its pleadings or merely reassert its previous allegations. Fed. R. Civ. P. 56(e). It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is "'whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

The Court must therefore grant a motion for summary judgment if Plaintiff, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie*, 328 F.3d at 873 (citing *Celotex Corp.,* 477 U.S. at 324.) However, in ruling on a motion for summary judgment, "a district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

### C.  Discussion

An insurance policy is a contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 218, 797 N.E.2d 1256, 1261 (2003). Under Ohio law, the law in effect at the time of entering a contract for automobile liability insurance governs to determine the scope of coverage of an uninsured/underinsured motorist claim. *Ross v. Farmers Ins. Group of Cos.*, 82 Ohio St.3d 281, 289, 695 N.E.2d 732, 738 (Ohio 1998) (holding that "for the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties"). Thus, the Court must first examine the Ohio law in effect on December 21, 2004, the date that Defendant issued the policy to Plaintiffs.

The Ohio statute governing uninsured/underinsured motorist coverage, Ohio Rev. Code § 3937.18, was amended effective October 31, 2001. As a result of that amendment, insurance

5

providers are no longer required to offer uninsured/underinsured motorist coverage.[1]  Moreover, uninsured/underinsured policy may no longer be implied as a matter of law in any insurance policy.[2]  Thus, the only way in which an individual may be entitled to uninsured/underinsured motorist coverage is for the policy to specifically provide for it.  *See* § 3937.18; *Arn*, 159 Ohio App.3d at 671, 825 N.E.2d at 188 (stating that policy holder does not have uninsured/ underinsured motorist coverage when declarations page unambiguously state that the underlying policy and umbrella policy do not provide uninsured/under-insured coverage).

In the present case, Ohio law did not require Defendant to offer uninsured/under-insured coverage in its 2004 policy to Plaintiffs.  Nevertheless, Defendant did specifically offer uninsured/underinsured coverage to Plaintiffs and recommended the Plaintiffs pay for such coverage.  Yet, Plaintiffs specifically rejected uninsured/underinsured coverage.  Plaintiffs contend, however, that the first page of the application, which provided quotes and limits for the various coverage, contradicts the supplemental application which pertains specifically to whether Plaintiffs want uninsured/underinsured motorist coverage.  This Court emphasizes that Plaintiffs

---

[1] Section 3937.18(A) states "[a]ny policy of insurance delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state that insures against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, may, *but is not required to, include uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages.*") (emphasis added).

[2] Ohio Senate Bill 97 amended § 3937.18(A).  In the bill, the Ohio General Assembly also stressed its intent to "[e]liminate the possibility of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages being implied as a matter of law in any insurance policy." 2001 S 97, § 3, eff. 10-31-01; *see also Arn v. McLean*, 159 Ohio App.3d 662, 667, 825 N.E.2d 181, 185 (Ohio App. 2 Dist. 2005).

admit that they signed all of the portions aforementioned and acknowledge that they did not "fully read" the pages that they signed. (Docs. # 21-1; 21-6.) This Court finds that Plaintiffs' failure to read the application and the subsequently issued policy is not an adequate defense.

It is well-established that the failure to read the terms of a contract is not a valid defense to enforcement of the contract. *Haller v. Borror Corp.* 50 Ohio St.3d 10, 14, 552 N.E.2d 207, 210 (Ohio,1990) (stating that "[a] person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs." (quoting *Dice v. Akron, Canton & Youngstown RR. Co.* (1951), 155 Ohio St. 185, 191, 98 N.E.2d 301, 304, reversed on other grounds (1952), 342 U.S. 359)).

Thus, it is immaterial that Plaintiffs believed that they were not aware that they declined uninsured/under coverage when they marked "x" in the line rejecting coverage and then signed the application affirming their decision to reject such coverage. Plaintiffs' assumptions are not a defense and do not negate the fact that Plaintiffs' explicitly rejected the uninsured/underinsured motorist coverage. Thus, this Court finds that Plaintiffs are not entitled to uninsured /underinsured motorist coverage.

Alternatively, Plaintiffs argue that Defendants should be held liable under a theory of promissory estoppel. Promissory estoppel, is not a contractual theory but a quasi-contractual or equitable doctrine designed to prevent the harm resulting from the reasonable and detrimental reliance on a representation or a promise. *E.g., Karnes v. Doctors Hosp.*, 51 Ohio St.3d 139, 142, 555 N.E.2d 280, 283 (1990).
 To establish a claim for promissory estoppel, a plaintiff must show that: (1) a promise was

made; (2) the promisor should have reasonably expect to induce action or forbearance on the part of promisee or a third person; (3) the expected action or forbearance actually resulted; and (4) was detrimental to that person.  *E.g., Karnes*, 51 Ohio St.3d at 141-42, 555 N.E.2d at 282-83.

Here, this Court acknowledges that Defendant promised Plaintiffs– through representations in the mailing and on the telephone–that if they signed and returned application, they could obtain coverage that mirrored their former policy.  Notwithstanding this promise, this Court finds that Defendant, as the promisor, would reasonably expect Plaintiffs to read the application that they signed and sign the lines that indicate that they wanted uninsured/ underinsured motorist coverage.  If Plaintiffs had carefully read the policy, as one would reasonably expect, Plaintiff would have presumably obtained identical coverage including uninsured/underinsured motorist coverage as promised.   Thus, Defendant did not make any false representations.  Rather, Plaintiffs' own failure to read an unambiguous policy coupled with their decision to specifically reject the uninsured/underinsured motorist coverage caused Plaintiffs' injury.  This Court therefore also rejects Plaintiffs' promissory estoppel argument.

## D.  Conclusion

Thus, for the reasons aforementioned, this Court **GRANTS** Defendant's motion.  (Doc. # 19.)  The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

    /s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE